UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WEBSOCK GLOBAL STRATEGIES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AKAMAI TECHNOLOGIES, INC.,<br><br>    Defendant. | Civil Action No.: 6:24-cv-00256-DAE<br><br>JURY TRIAL DEMANDED |

**DEFENDANT AKAMAI TECHNOLOGIES, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ...................................................................................................1 | |
| II. | BACKGROUND .....................................................................................................2 | |
| | A. Venue Allegations.......................................................................................2 | |
| | B. The Asserted Patent ....................................................................................2 | |
| III. | LEGAL STANDARDS ...........................................................................................3 | |
| | A. Improper Venue...........................................................................................3 | |
| | B. Failure to State a Claim for Patent Infringement .......................................4 | |
| IV. | THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE...............5 | |
| | A. Akamai Does Not Reside in the Western District of Texas.....................5 | |
| | B. Akamai Has No Regular and Established Place of Business in the Western District of Texas...........................................................................6 | |
| V. | THIS CASE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR PATENT INFRINGEMENT .........................................................8 | |
| | A. The Complaint Does Not Allege Facts Plausibly Showing That Akamai Performs the Steps of the Asserted Method Claim..................................8 | |
| | B. The Complaint Fails to Recite Facts Addressing Some Claim Limitations and Recites Facts Contradicting Others...................................................10 | |
| VI. | CONCLUSION......................................................................................................12 | |

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Aeritas, LLC v. Darden Corporation*,
  2021 WL 4868430 (W.D. Tex. Oct. 18, 2021) ................................................................. 6, 7

*Ambraco, Inc. v. Bossclip, B.V.*,
  570 F.3d 233 (5th Cir. 2009) .................................................................................................. 6

*Arnold v. Williams*,
  979 F.3d 262 (5th Cir. 2020) .................................................................................................. 7

*ARX Fit, LLC v. Outstrip Equipment, LLC*,
  2019 WL 3068335 (W.D. Tex. July 12, 2019) ..................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 4, 9

*ASK Sydney, LLC v. Amazon.com Servs., LLC*,
  2023 WL 5216815 (W.D. Tex. Aug. 14, 2023) ................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 4, 9

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................... 5, 11, 12

*Brumfield v IBG LLC*,
  97 F.4th 854 (Fed. Cir. 2024) .................................................................................................. 8

*Correct Transmission LLC v. ADTRAN, Inc.*,
  2021 WL 1967985 (W.D. Tex. May 17, 2021) ..................................................................... 7

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ..................................................................................... 4, 6, 7

*De La Vega v. Microsoft*,
  2020 WL 3528411 (W.D. Tex. 2020) .................................................................................... 9

*Grecia Estate Holdings LLC v. Meta Platforms, Inc.*,
  605 F. Supp. 3d 905 (W.D. Tex. 2022) ............................................................................... 10

*Interactive Toybox, LLC v. The Walt Disney Company*,
  2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ..................................................................... 7

*Koss Corp. v. Skullcandy, Inc.*,
  2021 WL 1226557 (W.D. Tex. Mar. 31, 2021) ..................................................................... 7

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
  2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ................................................................. 5

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006) ............................................................................... 8, 9

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ........................................................................................ 9

*Ricoh Co., Ldt. v. Quanta Co. Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008) .................................................................................... 8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017) ........................................................................................ 1, 3, 4, 6

*USC IP P'ship v. Facebook, Inc.*,
  2021 WL 3134260 (W.D. Tex. July 23, 2021) ............................................................ 4

*Vervain, LLC v. Micron Tech., Inc.*,
  2022 WL 234698 (W.D. Tex. Jan 3, 2022) ................................................................. 4

*Westech Aerosol Corp. v. 3M Co.*,
  927 F.3d 1378 (Fed. Cir. 2019) .................................................................................... 4

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) .................................................................................... 4

**FEDERAL STATUTES**

28 U.S.C. § 1400 ............................................................................................... *passim*

35 U.S.C. § 271 ............................................................................................................ 3, 8

**FEDERAL RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 12(b)(3) ................................................................................................................ 1
  Rule 12(b)(6) ............................................................................................................ 1, 4

Defendant Akamai Technologies, Inc. respectfully requests that the Court dismiss the complaint filed by plaintiff WebSock Global Strategies LLC for lack of proper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1400. Alternatively, and in addition, Akamai respectfully requests that the Court dismiss the complaint for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6). Akamai requests an oral argument on this motion.

**I.     INTRODUCTION**

This case should be dismissed for improper venue. In patent cases, venue is proper only in a district where the defendant (1) "resides" or (2) "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017). Neither prong is satisfied here. Akamai does not "reside" in the Western District of Texas ("WDTX") because it is incorporated in Delaware. Akamai also does not have any place of business—much less a "regular and established" place of business—in WDTX. Because Akamai neither resides in nor has a regular and established place of business in this District, venue is improper and this case should be dismissed.

As a further ground for dismissal, the complaint fails to state a claim on which relief can be granted. Plaintiff alleges that Akamai has directly infringed a single method claim of U.S. Patent No. 7,756,983 (the "'983 Patent"). Yet, the complaint and attached claim chart fail to recite facts plausibly showing that Akamai—as opposed to some unidentified Akamai customer or other third party—performs each and every step of the asserted method claim as required to state a claim for direct infringement. Further, the complaint and chart fail to recite facts regarding some claim limitations, and they recite other facts that directly contradict infringement.

Plaintiff's failure to allege specific facts stating a plausible claim for patent infringement is a further reason to dismiss the complaint.

## II.  BACKGROUND

### A.  Venue Allegations

On May 14, 2024, plaintiff WebSock Global Strategies LLC filed its complaint for patent infringement against Akamai.  Dkt. 1.  In the complaint, the plaintiff alleges that Akamai "is a corporation organized and existing under the laws of Delaware" and further alleges (incorrectly) that Akamai "maintains an established place of business at 6836 Austin Center Boulevard 165 Austin, TX 78731."  *Id.* ¶ 3.  In a section entitled "Venue," the complaint reads as follows: "Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District.  In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district."  *Id.* ¶ 7.  There are no other allegations regarding venue in the complaint.

### B.  The Asserted Patent

The '983 Patent is directed to a technique for permitting bidirectional communications on an asymmetric network in which "client" nodes send requests and "server" nodes send responses to those requests.  Dkt. 1-1 at Abstract, 2:5-21, 3:29-32.  Among other things, the claimed technique requires the client and server nodes to perform a "role reversal" permitting the server node to act as a client and vice versa.  *Id.* at 3:29-32, 4:21-44.  The patent expired in 2023.

Plaintiff alleges that Akamai directly infringes claim 21.  The claim reads as follows:

21. A method of computer network node communication comprising:

initially establishing a first asymmetric hypertext transfer protocol (HTTP) transactional session to establish an original network connection, said session being uniquely identifiable, between a first node and a second node, said first node enacting a first transactional role of a client and said second node enacting a

2

>   second transactional role of a server, said roles comprising either of an HTTP server that relays data and an HTTP client that initiates requests;
>
>   terminating said first asymmetric HTTP transactional session while maintaining an underlying network connection;
>
>   negotiating between said first node and said second node a transactional role reversal, said step of negotiating referencing said original network connection; and
>
>   establishing a second asymmetric transactional session, said session being uniquely identifiable by said URI, said first node enacting said second transactional role and said second node enacting said first transactional role,
>
>   wherein said uniquely identifiable session uses a network connection traversing hardware enforcing asymmetric communication.

Dkt. 1-1 at 18:8-33.

As support, the plaintiff relies on facts alleged in an attached claim chart. Dkt. 1 ¶ 11; Dkt. 1-2. The allegations in the claim chart assert that Akamai offers a software product called Akamai Intelligent Platform that is compatible with an Internet protocol called WebSocket. Dkt. 1-2 at 3 ("The WebSockets feature is designed to enable Customer use of the WebSocket protocol on the Akamai Intelligent Platform."). The theory appears to be that the protocol infringes the patent, that Akamai's software permits users to communicate over networks employing the protocol, and that—as a consequence—Akamai itself directly infringes the patent claim under 35 U.S.C. § 271(a). *Id*. But the chart (and complaint) fails to allege facts plausibly showing that Akamai itself performs the steps of claim 21, as discussed further below.

### III. LEGAL STANDARDS

#### A. Improper Venue

In patent cases, 28 U.S.C. § 1400(b) governs venue. *TC Heartland*, 581 U.S. at 261. It provides that venue is appropriate only: "[1] where the defendant resides, or [2] where the defendant has committed acts of [alleged] infringement and has a regular and established place

of business." 28 U.S.C. § 1400(b). As to the first prong, the defendant resides only in its state of incorporation. *TC Heartland*, 581 U.S. at 270. As to the second prong, a "regular and established place of business" has three requirements, all of which must be satisfied: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

The question of whether venue is proper under Section 1400(b) is "an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citing *Cray*, 871 F.3d at 1360). In a patent infringement case such as this, "the plaintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b)." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019). The plaintiff here has not—and cannot—meet its burden.

### B.     Failure to State a Claim for Patent Infringement

Motions to dismiss under Rule 12(b)(6) in patent cases are decided according to the law of the regional circuit—here, the Fifth Circuit. *See Vervain, LLC v. Micron Tech., Inc.*, 2022 WL 234698, at *1 (W.D. Tex. Jan 3, 2022). A complaint is subject to dismissal under Rule 12(b)(6) if it fails to include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also USC IP P'ship v. Facebook, Inc.*, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021) (a complaint must "plead factual content that allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged") (internal quotation omitted and emphasis in original). Allegations that set forth the "mere possibility of misconduct" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint that alleges facts merely consistent with liability "stops short of the line between possibility and plausibility" and should be dismissed. *Twombly*, 550 U.S. at 557.

In a patent infringement case, the plaintiff must allege sufficient factual support for the material requirements in an allegedly infringed patent claim. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). A "plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* A greater level of detail may be required "depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the alleged infringing device." *Id.*

Courts in this District routinely dismiss complaints for failing to state facts providing a plausible infringement theory with respect to material claim limitations. *See, e.g.*, *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (dismissing complaint as "too vague to state a plausible claim for infringement" as to certain claim limitations); *ASK Sydney, LLC v. Amazon.com Servs., LLC*, 2023 WL 5216815, at *9-11 (W.D. Tex. Aug. 14, 2023) (dismissing certain claims where the complaint failed, among other things, to "plead sufficiently detailed facts on [a] material element").

**IV.    THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE**

    **A.    Akamai Does Not Reside in the Western District of Texas**

It is undisputed that Akamai does not "reside" in WDTX for purposes of patent venue. Akamai is incorporated in Delaware, not Texas. Dkt. 1 ¶ 3; Declaration of Todd Lawrence

("Lawrence Decl.") ¶ 4.[1]  Thus, Akamai cannot be subject to a patent infringement action in WDTX based on the first prong of Section 1400(b).  *TC Heartland*, 581 U.S. at 262.

### B.   Akamai Has No Regular and Established Place of Business in the Western District of Texas

Akamai cannot be subjected to this action under the second prong of Section 1400(b) either because it does not have a "regular and established place of business" in WDTX.  The second prong requires that there "be a physical, geographical location in the district from which the business of the defendant is carried out."  *Cray*, 871 F.3d at 1362.  Akamai does not own or lease any offices, factories, facilities, or properties in WDTX.  Lawrence Decl. ¶ 6.  Akamai is headquartered in Cambridge, Massachusetts, and it has other office locations that are identified on its website that ***do not include any location in this District***.  *Id.*, Exh. 1.

Plaintiff alleges in its complaint that Akamai "maintains an established place of business" at 6836 Austin Center Boulevard 165, Austin, Texas 78731.  Dkt. 1 ¶ 3.  That allegation is incorrect.  Lawrence Decl. ¶ 7.  Akamai does not presently and never has owned or leased any space at that location.  *Id.*[2]

---

[1]   In determining whether venue is proper, the Court is permitted to consider evidence beyond the facts alleged in the complaint and its attachments.  *See Aeritas, LLC v. Darden Corporation*, 2021 WL 4868430, at *1 (W.D. Tex. Oct. 18, 2021) (quoting *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)).

[2]   Plaintiff's counsel knows that this allegation is incorrect because he filed a similar complaint with the same incorrect allegation at the end of 2023, and Akamai responded by filing a motion to dismiss for improper venue just over **four months ago** in January 2024.  *See Gamehancement LLC v. Akamai Technologies, Inc.*, Case No. 6:23-cv-00829-RP, Dkt. 7.  Akamai's motion was supported by a declaration stating unequivocally that Akamai does not now have—and never has had—an office at the address recited in the prior complaint and again in this complaint.  *See id.*, Dkt. 7-1 ¶ 7.  Akamai reserves the right to seek its attorney fees incurred because this case was inappropriately filed in a district where Akamai is not subject to venue.

For these reasons, the plaintiff does not—and cannot—allege any facts showing that Akamai is properly subject to venue in WDTX. Instead, the plaintiff merely alleges in conclusory fashion that "[v]enue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District." Dkt. 1 ¶ 7. But, "a plaintiff may not simply rely on legally conclusory statements to survive a motion to dismiss." *Aeritas*, 2021 WL 4868430, at *2-3 (granting a motion to dismiss for improper venue where plaintiff relied on conclusory allegations); *see also Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (holding that courts need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions). Thus, other than alleging an incorrect address at which Akamai does not now have—and never has had—a place of business, the complaint offers no factual allegations to even suggest that venue is proper in WDTX.

Put simply, Akamai does not have any regular, physical presence from which it conducts its business in WDTX. Lawrence Decl. ¶¶ 5-7. This incontrovertible fact requires dismissal of this case for improper venue. *See, e.g., Cray*, 871 F.3d at 1357 (venue improper where, among other things, "[defendant] does not rent or own an office or any property in…Texas"); *Correct Transmission LLC v. ADTRAN, Inc.*, 2021 WL 1967985, at *1 (W.D. Tex. May 17, 2021) (venue improper where, among other things, "[defendant] maintains no offices in the Western District of Texas"); *Koss Corp. v. Skullcandy, Inc.*, 2021 WL 1226557, at *2 (W.D. Tex. Mar. 31, 2021) (venue improper where, among other things, "[defendant] does not lease or own any real property in Texas"); *ARX Fit, LLC v. Outstrip Equipment, LLC*, 2019 WL 3068335, at *3 (W.D. Tex. July 12, 2019) (venue improper where defendant had no physical facilities, corporate offices, or real property in the district); *Interactive Toybox, LLC v. The Walt Disney Company*,

7

2018 WL 5284625, *3 (W.D. Tex. Oct. 24, 2018) (venue improper where defendants "have never maintained, owned, or rented any physical space in Texas").

## V.     THIS CASE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR PATENT INFRINGEMENT

### A.     The Complaint Does Not Allege Facts Plausibly Showing That Akamai Performs the Steps of the Asserted Method Claim

In its complaint, the plaintiff alleges that "Defendant directly infringed one or more claims of the '983 Patent in at least this District by making, using, offering to sell, selling, and/or importing" the product identified in the attached chart (i.e., the Akamai Intelligent Platform). Dkt. 1 ¶ 11.  Federal Circuit law is clear, however, that a defendant cannot infringe a method claim by making, selling, offering to sell, or importing a product or software that allegedly can be used to perform the steps of the claim—only the person or entity using the product/software to perform each and every step can directly infringe.  *See Brumfield v IBG LLC*, 97 F.4th 854, 879 (Fed. Cir. 2024) ("There is no established recognition in patent law of direct infringement by 'making' a 'method'; and, indeed, we have indicated that direct infringement is limited to using the method, stating that '[a] method claim is *directly* infringed only by practicing the patented method.") (citation omitted, emphasis in original); *Ricoh Co., Ldt. v. Quanta Co. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[W]e hold that a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by sale of an apparatus that is capable of infringing use.").  Thus, to state a plausible claim for direct patent infringement, the plaintiff would have to show that Akamai performs each step of claim 21.  It has not done so.

**Customer use**: The complaint asserts: "Exhibit 2 includes charts comparing the Exemplary '983 Patent Claims to the Exemplary Defendant Products.  As set forth in these

charts, the Exemplary Defendant Products practice the technology claimed by the '983 Patent." Dkt. 1 ¶ 13.  But the only fact alleged in the plaintiff's claim chart that is specific to Akamai (as opposed to the WebSocket standard) is the following statement from an unidentified form agreement:  "The WebSockets feature is designed to enable **Customer use** of the WebSocket protocol on the Akamai Intelligent Platform."  Dkt. 1-2 at 3 (emphasis added).  Thus, the allegations in the claim chart suggest, at most, that Akamai customers (not Akamai itself) may perform the steps of the claim.  Yet, as noted above, direct infringement only exists if the defendant itself performs every step of the claim.  *See Ormco*, 463 F.3d at 1311.  The chart contains no facts plausibly alleging that Akamai—as opposed to a customer or other third party—performs every step.

      **Internal testing**:  The plaintiff alleges in the complaint that "Defendant also directly infringed, literally or under the doctrine of equivalents, the Exemplary '983 Claims, by having its employees internally test and use these Exemplary Products."  Dkt. 1 ¶ 13.  This conclusory assertion is unsupported by any facts at all—certainly no facts making a plausible showing that testing an Akamai product requires an Akamai employee to perform each of the steps of claim 21.  *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").  To illustrate the point, neither the complaint nor the claim chart recites any facts showing that an Akamai employee testing the Akamai Intelligent Platform performs the required step of "terminating said first asymmetric HTTP transactional session…" or the step of "negotiating between said first node and said second node a transactional role reversal…."  Dkt. 1-1 at 18:19-24.

      Courts in this District have rejected similar bald assertions of internal testing, concluding that they "fall short of the requirements set forth in *Twombly* and *Iqbal*."  *De La Vega v.*

9

*Microsoft*, 2020 WL 3528411, at *4 (W.D. Tex. 2020) ("Plaintiff has not articulated any basis that would establish that either [defendant] performed all of the elements of the claim when it tested the accused products.  Plaintiff is doing nothing more than making that assumption."); *see also Grecia Estate Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022) ("[Plaintiff] states that [defendant] infringes with its 'internal testing, quality assurance, research and development, and troubleshooting.'  That level of detail, however, falls short of the relevant pleading standard given the complexity of the disputed technology.").

> B. **The Complaint Fails to Recite Facts Addressing Some Claim Limitations and Recites Facts Contradicting Others**

Plaintiff's complaint and claim chart fail to identify any facts for a number of claim 21's required limitations.  For example, the claim recites the step of "negotiating between said first node and said second node a transactional role reversal, said step of negotiating ***referencing said original network connection***."  Dkt. 1-1 at 18:22-24 (emphasis added).  The claim chart repeats the words of the limitation but does not identify any facts showing that the "negotiating" step involves "referencing said original network connection."  Dkt. 1-2 at 10-11.

The claim also recites the step of "establishing a second asymmetric transactional session, said session being uniquely identifiable by ***said URI***…."  Dkt. 1-1 at 18:25-26 (emphasis added).  Again, the claim chart repeats the claim language but does not identify any particular URI as "said URI."  Dkt. 1-2 at 13-14.  Plaintiff's failure to recite any facts for this limitation is further problematic because the term "said URI" lacks antecedent basis, and the claim language itself is unclear as to what URI is required.  The claim chart fails to put Akamai on notice of how this ambiguous claim limitation is allegedly met.

In other instances, the claim chart recites facts that contradict the claim language.  For example, claim 21 recites "initially establishing a first asymmetric hypertext transfer protocol

10

(HTTP) transactional session" in which "a first node and a second node" perform certain roles (i.e., "said roles comprising either of an HTTP server that relays data and an HTTP client that initiates requests"). Dkt. 1-1 at 18:10-18. According to the patent and the plaintiff's allegations, this communication session is "asymmetric" because the client node requests data and the server node responds to the request—each node is limited to its particular role of either sending a request or sending a response. *Id*. at 2:10-12. The claim then recites the further step of "establishing a second asymmetric transactional session." *Id*. at 18:25. But, for that limitation the claim chart states that "both the server and the client can relay data independent of each other" and quotes the WebSocket protocol stating that "[t]his is a two-way communication channel where each side can independently from the other, send data at will." Dkt. 1-2 at 13-15. In other words, the claim requires a "second *asymmetric* transactional session," but the claim chart alleges facts showing that the second transactional session is *symmetric* (i.e., either node can independently "send data at will"). These allegations directly contradict the claim language and the plaintiff's own allegations regarding the "first asymmetric" transaction session. *See Bot M8*, 4 F.4th at 1346 (confirming that "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims").

As another example, the claim recites in the final limitation that "said uniquely identifiable session uses a network connection *traversing hardware enforcing asymmetric communication*." Dkt. 1-1 at 18:30-32. The claim chart does not identify any particular "hardware" that is being traversed. Instead, the chart asserts that WebSocket is designed to work over HTTP ports and "[t]hus, it can be said that the uniquely identifiable session uses a network connection traversing hardware enforcing asymmetric communication." Dkt. 1-2 at 17-18. The patent specification states, however, that HTTP is a communication protocol used on top of a

TCP/IP network, which the patent explicitly states is **symmetrical** (i.e., the opposite of what the claim requires).  Dkt. 1-1 at 2:29-31 ("HTTP communication has evolved in an asymmetrical fashion with respect to the underlying TCP/IP network, which is generally symmetrical."). Again, the claim chart alleges facts that directly contradict the claim language.  *See Bot M8*, 4 F.4th at 1346.[3]

## VI.     CONCLUSION

This case does not belong in WDTX.  Akamai is not a resident of Texas, and it has no regular and established place of business in this District.  Under binding Supreme Court and Federal Circuit precedent, the plaintiff's complaint for patent infringement should be dismissed because venue is improper here.  In addition, because the complaint fails to state facts plausibly alleging patent infringement by Akamai, the complaint should be dismissed for failure to state a claim.

DATED:  June 6, 2024                              Respectfully submitted,

By:   /s/ *James L. Day*
James L. Day
California State Bar No. 197158 (*admitted*)
FARELLA BRAUN + MARTEL LLP
One Bush Street, 9th Floor
San Francisco, California 94104
Telephone:  (415) 954-4400
Fax:  (415) 954-4480
jday@fbm.com

Attorneys for Defendant
AKAMAI TECHNOLOGIES, INC.

---

[3]   While Akamai has identified in this brief several specific defects in the plaintiff's infringement theory, Akamai does not concede that claim limitations not addressed here are sufficiently supported by the facts alleged.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of June, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this motion and related documents via the Court's CM/ECF system.

*/s/ James L. Day*
James L. Day
